Rodney M. Jean, Bar # 1395
Gregory R. Gemignani, Bar # 7346
Lionel Sawyer & Collins
300 S. 4th Street
Las Vegas, Nevada 89101
(702) 383-8888 (Telephone)
(702) 383-8845 (Fax)

Attorneys for plaintiff James Roskind

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| James Roskind, an individual, | Case No. CV-S-05-0825-RCJ-RJJ |
| Plaintiff, | |
| v. | **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| Aaron Emigh, an individual; and Radix Labs, LLC, a Nevada limited liability company, | |
| Defendants. | |

Plaintiff commenced this action to dissolve Radix Labs, LLC ("Radix Labs") pursuant to NRS 86.495, and to distribute the assets of Radix Labs in accordance with NRS 86.521. The case was tried to the Court June 9-11, 2008. Plaintiff appeared through his attorneys, Rodney M. Jean and Greg Gemignani of Lionel Sawyer & Collins. Defendant Aaron Emigh appeared through his attorney, Brad Johnston of Holland and Hart. On the third day of trial, the Court stated that it was ready to announce its ruling with respect to plaintiff's first claim, for dissolution of Radix Labs, and directed counsel for Mr. Emigh to make an offer of proof with respect to the remainder of Mr. Emigh's case. After hearing Mr. Emigh's offer of proof, the Court announced its decision to enter judgment on plaintiff's first claim in favor of plaintiff and against Mr. Emigh. In support thereof, the Court enters these Findings of Fact and Conclusions of Law.

These draft Findings of Fact and Conclusions of Law were submitted to Mr. Emigh's attorney seven days ago, on July 18, 2008. Mr. Emigh has not submitted any responsive comments, saying he has not heard back from his client on this matter. As a result, these Findings and Conclusions are submitted without signature of opposing counsel.

# FINDINGS OF FACT

1. Radix Labs is a Nevada limited liability company with its principal place of business in Nevada. The members of Radix Labs are Dr. James Roskind and Mr. Aaron Emigh.

2. Dr. Roskind is a California resident and Mr. Emigh is a Nevada resident.

3. Radix Labs is a nominal defendant in this action; no affirmative relief is sought against Radix Labs, and Radix Labs has not answered or otherwise appeared herein.

4. The amount in controversy in this case exceeds $75,000.

5. James Roskind holds a double Ph.D. in electrical engineering and computer science from Massachusetts Institute of Technology. Dr. Roskind holds numerous patents, and he was previously a co-founder of Infoseek, vice president and chief science officer of Netscape, and vice president and chief technology officer for AOL Technologies.

6. Dr. Roskind and Mr. Emigh met in the early 1990's. In 2003, they decided to work together to create, own, and license intellectual property, mainly in the field of electronics.

7. Dr. Roskind and Mr. Emigh caused Radix Partners, a California limited liability company ("Radix Partners"), to be formed in September 2003.

8. Dr. Roskind and Mr. Emigh each contributed $5,000 to capitalize Radix Partners. They each became managing members and they each obtained a 50% interest in Radix Partners.

9. Dr. Roskind loaned Radix Partners $15,000 on July 26, 2004 (the "$15,000 Loan"). An e-mail commemorating the $15,000 Loan stated in part:

> The loan is expected to be repaid out of income earned by the company. ***Jim has the right to demand that $1 be used to retire the loan for every $1 that is paid out to members of the LLC by the Company,*** but Jim may choose to not demand some or all such repayment when there is a distribution of funds from the Company to members. Aaron has the right to demand that the loan be repaid at any point in time out of any income or funds held by the company.

(Emphasis added.)

10. The $15,000 Loan further provided that the interest rate would be set monthly based on a prime interest rate formula set forth at the following web site:

> http://www.nfsn.com/library/prime.htm

2

11. Dr. Roskind and Mr. Emigh began collaborating on proposed inventions in 2003. Within a year they had filed a number of provisional patent applications.

12. With Mr. Emigh's approval, Dr. Roskind retained William James, a patent attorney with the California law firm of Van Pelt and Yi, in or about August 2004 to submit and prosecute some utility patents.

13. For personal tax reasons, Mr. Emigh proposed creating a Nevada limited liability company in 2004 and transferring Radix Partners' assets into the Nevada entity, then dissolving Radix Partners.

14. Dr. Roskind and Mr. Emigh retained California attorney Ted Wang to dissolve Radix Partners and form Radix Labs, and to draft an operating agreement and stock purchase agreement for Radix Labs.

15. Radix Labs was formed on October 5, 2004. The Articles of Organization identify Dr. Roskind and Mr. Emigh as its two managing members.

16. Dr. Roskind and Mr. Emigh opened a bank account for Radix Labs and deposited monies from Radix Partners' bank account into it. They instructed outside counsel who were prosecuting some of the patents to begin invoicing Radix Labs instead of Radix Partners, and they commenced doing business as Radix Labs.

17. Dr. Roskind and Mr. Emigh agreed they would control expenditures for both Radix Partners and for Radix Labs by requiring dual signatures for issuance of every Radix Labs check, except in emergencies.

18. Dr. Roskind and Mr. Emigh agreed they would attempt to hire in-house patent counsel to submit and prosecute patent applications. They contacted patent attorneys, but could not agree on hiring one.

19. In addition to patent attorneys and patent agents, inventors are permitted by law to submit their own patent applications. In the absence of agreed-upon patent counsel, Mr. Emigh submitted provisional patent applications on behalf of Radix Partners and Radix Labs. Provisional patent applications are much less complicated and require less sophistication to prepare and submit than utility patent applications. It is utility patent applications which are prosecuted.

3

20. Mr. Wang prepared a draft operating agreement and a draft stock purchase agreement for Radix Labs. However, Dr. Roskind and Mr. Emigh did not agree on the terms of either agreement, and they disputed Mr. Wang's bill for preparing the drafts. Mr. Wang agreed not to charge for the draft agreements if they agreed not to use them for Radix Labs and to destroy all copies of the drafts. Mr. Emigh and Dr. Roskind agreed to do so.

21. Despite his promise, Mr. Emigh did not destroy all his copies of the draft operating agreement and the draft stock purchase agreement.

22. Mr. Emigh argued that the Court should enforce the terms of the draft operating agreement and the vesting provisions of the stock purchase agreement which was prepared by Mr. Wang but never executed, and which the parties had agreed to destroy and that, as a result, the Court should deem Susan Yi to have a beneficial interest in Radix Labs, and Dr. Roskind should be deemed to have withdrawn from Radix Labs, such that Dr. Roskind no longer is entitled to any voice in the operations of Radix Labs.

23. Radix Labs has no written operating agreement. The draft operating agreement which was prepared by Mr. Wang but never signed by either Dr. Roskind or Mr. Emigh, and which Dr. Roskind and Mr. Emigh agreed to destroy, does not constitute a valid and enforceable operating agreement for Radix Labs.

24. Susan Yi is a California patent attorney. She has a personal relationship with Mr. Emigh and she lives with him.

25. Ms. Yi provided some advice to Mr. Emigh in preparing and submitting patent applications.

26. Ms. Yi expressly disclaimed representation by her of Radix Partners or Radix Labs. She never prepared or signed an engagement letter with Radix Partners or Radix Labs. Neither Radix Partners nor Radix Labs was, at any time, a client of Susan Yi.

27. Mr. Emigh and Dr. Roskind discussed the possibility of granting Susan Yi a small beneficial interest in Radix Labs in 2004. However, they never agreed upon the granting of such a beneficial interest or on its terms. In answering the complaint in this case, Mr. Emigh admitted the percentages of ownership of Radix Labs were 50/50.

4

28. Susan Yi is not a party to the case. She has made no demand on Dr. Roskind for a beneficial interest in Radix Labs, and she has no interest in Radix Labs.

29. Radix Labs has not adopted the draft shareholder purchase agreement or any vesting agreement regarding withdrawal of members from Radix Labs.

30. Dr. Roskind loaned Radix Labs $25,000 on or about December 7, 2004 (the "$25,000 Loan"). The $25,000 Loan was evidenced by an email from Dr. Roskind to Mr. Emigh which stated:

> This is to confirm an additional loan in the amount of $25,000 (Twenty-Five Thousand Dollars) made on 12/7/04 by Jim Roskind to Radix Labs, LLC. The terms are identical to a previous loan, as described below.

31. The $25,000 Loan further provided:

> This is to confirm our agreement regarding some loans that Jim Roskind will be making to Radix Labs, LLC, the Company. The first loan was for $15,000 (Fifteen Thousand Dollars) on 7/26/2004.
>
> * * *
>
> The loan is expected to be repaid out of income earned by the company. Jim has the right to demand that $1 be used to retire the loan for every $1 that is paid out to members of the LLC by the Company, but Jim may choose to not demand some or all such repayment when there is a distribution of funds from the Company to members. Aaron has the right to demand that the loan be repaid at any point in time out of any income or funds held by the company.

32. The $25,000 Loan further provided that interest thereon would be set monthly based on the prime interest rate formula set forth at the following web site:

> http://www.nfsn.com/library/prime.htm

33. Mr. Emigh has not contested the validity of the $15,000 and $25,000 Loans as obligations of Radix Labs.

34. Disputes arose between Mr. Emigh and Dr. Roskind over a variety of issues, including,

    A. Mr. Emigh's designated himself "First Inventor" on patent office submissions, even when Dr. Roskind had made a greater contributions to the inventions.

    B. Mr. Emigh held himself out as "President" of Radix Labs, although Radix Labs is an LLC which has no president, both parties had previously agreed to be designated

5

as managing directors, and they were both identified as managing members by the Articles of Organization.

C. Mr. Emigh refused to agree to pay outside patent counsel to submit and prosecute utility patent applications after April, 2005. Dr. Roskind believed it was essential to have such applications done professionally. Mr. Roskind paid for outside counsel to prosecute some of the patent applications and submitted the cost thereof to Mr. Emigh as a Radix Labs expense.

D. Mr. Emigh asked to review the Dr. Roskind's patent files and the Radix Labs patent docket, then failed to return them to Dr. Roskind, thereby limiting Dr. Roskind's access to current information concerning the status of the application.

E. (1) Radix Labs received certain income as a result of consulting services in 2005 for a company called Anakam. Dr. Roskind refused to authorize distribution of the proceeds from such services to Radix Labs' members because Radix Labs was running out of money and Dr. Roskind had received no payments on his loans. Dr. Roskind insisted on *pari passu* repayment of his loans with any distribution to members, in accordance with the loan agreements.

(2) Mr. Emigh made a distribution to himself despite Dr. Roskind's objection. He wrote a check to himself for $11,100 and cashed it without obtaining Dr. Roskind's approval or signature thereon. Mr Emigh also signed and sent to Dr. Roskind a check for $1,467 based on the amount Dr. Roskind had billed on the Anakam matter. Dr. Roskind countersigned the $1,467 check and cashed it. He then transferred the remaining $6,000 from Radix Labs' account into a new account in Radix Labs' name, on which Dr. Roskind is the sole signatory at the same bank. As a result, the parties exchanged a series of e-mails concerning this transaction in which each accused the other of theft.

F. Mr. Emigh delayed unreasonably long in forwarding office actions from the US Patent Office to Dr. Roskind.

G. Mr. Emigh asserted Dr. Roskind was no longer a managing member of Radix Labs and that Dr. Roskind's membership interest in Radix Labs had been "ratcheted down"

6

as a result of a vesting provision in the unsigned draft stock purchase agreement on which Dr. Roskind had never agreed and which the parties had agreed to destroy.

The above disputes have become so serious that it is no longer reasonably practicable for Radix Labs to continue to do business under its Articles of Organization.

35. Arguing in defense of plaintiff's claim for dissolution of Radix Labs, Mr. Emigh has characterized the disputes between Dr. Rosind and Mr. Emigh concerning Radix Labs as trivial and manufactured by Mr. Roskind simply to support a claim for dissolution of Radix Labs. The Court finds that the disputes between Mr. Emigh and Dr. Roskind are not trivial, and that they were not manufactured by Dr. Roskind merely to support a claim that Radix Labs must be dissolved.

36. Mr. Emigh also argued that the disputes did not make continued operation of Radix Labs "not reasonably practicable," as evidenced by the continued existence of Radix Labs during the pendency of this lawsuit.

37. These disputes and the testimony of Mr. Emigh at trial have convinced the Court that it is not reasonably practicable to carry on the business of Radix Labs under its Articles of Organization for the following reasons:

A. Mr. Emigh is a narcissist and he has no ability to perceive that he has an obligation to share in the management of Radix Labs. He thinks that everything he has done is just absolutely correct. TR, p. 5, ll. 16-21.[1]

B. The position taken by Mr. Emigh that Dr. Roskind has forfeited his interest in Radix Labs or to turn his interest into a beneficial interest only is not supported by the evidence and is absolutely ridiculous. TR, p. 6, ll. 6-12.

C. There is a clear disagreement on the right to manage and make decisions relative to all of the critical functions that Radix Labs needs to complete reasonably its business. TR, p. 7, ll. 16-19.

D. There is absolute disagreement on who has the right to make decisions for Radix Labs. There shouldn't be. Radix Labs is a 50/50 entity. TR, p. 7, ll. 21-23.

---

[1] All references to the transcript herein are to the partial transcript of the Court's proceedings on June 11, 2008, covering the time from 10:07 a.m. to 11:14 a.m.

7

E. There is absolute disagreement on the course to prosecute Radix Labs' patent applications, on the course to market its patents, on the course of management of Radix Labs, and on even the simple theory of payment of expenses and when loans would be repaid. TR, p. 7, l. 23 - p. 8, l. 1.

F. Mr. Emigh's view that continued operation of Radix Labs during this lawsuit demonstrates the reasonable practicability of future operation is a narcissistic view. It continued to operate only in accord with the control and management and in the direction that Mr. Emigh wanted it to go. Mr. Emigh's defense against dissolution based on such an argument is frivolous. TR, p. 9, l. 11 - p. 10, l. 1.

38. The 38 pending patent applications identified on the Radix Labs patent docket (Exhibit 612), the issued patent (identified on the patent docket as PA-007), and the $6,000 which Dr. Roskind moved into a separate bank account, are the primary assets of Radix Labs.

39. The combined total accrued interest on the $15,000 Loan and the $25,000 Loan as of July 21, 2008 is $11,421.52. The combined per diem interest rate on both loans together as of July, 2008, is 6.75.

40. Dr. Roskind's legal expenses for outside patent counsel were incurred for the benefit of Radix Labs and are proper charges against Radix Labs. Dr. Roskind is a creditor of Radix Labs to the extent of such expenses.

41. Dr. Roskind and Mr. Emigh are both creditors of Radix Labs in the amount of any expenses which were incurred by either of them and approved by the other, and to the extent such expenses were incurred to benefit the business of Radix Labs.

42. Mr. Emigh is a creditor of Radix Labs to the extent of his expenses as set forth in Exhibit 603 in the amount of $18,296.82.

43. In addition to his loans to Radix Labs, Dr. Roskind is a creditor of Radix Labs to the extent of his expenses set forth in Exhibits 104, 105, 107, 208, 109, and 110 in the amount of $40,127.80.

44. Mr. Emigh's costs and legal expenses in defending this case are not expenses chargeable against Radix Labs.

8

45. The members of Radix Labs each have made equal capital contributions of $5,000 to Radix Labs.

46. The Court's determination of the issue of dissolution pursuant to NRS 86.495 completely resolves plaintiff's first claim for relief in this action. The Court expressly determines that there is no just reason for delay in entering a final judgment on plaintiff's first claim, and directs that a final judgment be entered in favor of plaintiff and against defendant Aaron Emigh on plaintiff's first claim.

47. To the extent any of these Findings of Fact should more properly be deemed Conclusions of Law, they shall be so deemed.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, in that plaintiff and defendant are residents of different states and the amount in controversy exceeds $75,000. Radix Labs is a nominal defendant which has not even answered the complaint or appeared in the action, and it is therefore not considered for purposes of determining diversity jurisdiction.

2. Plaintiff is entitled to entry of a decree by this Court dissolving Radix Labs pursuant to NRS 86.495 and to distribution of the assets of Radix Labs pursuant to NRS 86.521.

3. Dr. Roskind and Mr. Emigh are each managing members of Radix Labs.

4. Dr. Roskind and Mr. Emigh each have a 50% interest in Radix Labs. Nobody else has any membership interest or beneficial interest in Radix Labs.

5. An operating agreement for a Nevada LLC must be agreed upon in writing by the members pursuant to NRS 86.101 and 86.286. The draft operating agreement in this case, which the members agreed to destroy and never signed, does not constitute a valid and legally enforceable operating agreement. Mr. Emigh's argument that the parties' legal rights in the LLC are controlled by a draft operating agreement on which the parties never agreed, which the parties never signed, and which the parties explicitly agreed to destroy and not use, is frivolous.

6. NRS 86.331 provides members cannot withdraw from a Nevada LLC before the dissolution and winding up of the company, except as provided in the operating agreement or the articles of organization. Radix Labs has no operating agreement and its Articles of Organization are

9

silent regarding withdrawal. Dr. Roskind has not withdrawn from Radix Labs, and Mr. Emigh's argument that Mr. Roskind has withdrawn from Radix Labs and is therefore subject to a vesting provision in an unsigned draft stock purchase agreement which the parties agreed not to use and to destroy, is frivolous.

7. In the absence of an agreement between Dr. Roskind and Mr. Emigh, Mr. Emigh cannot acquire "sweat equity" in Radix Labs as a result of a services performed on behalf of Radix Labs through submitting and prosecuting patent applications.

8. Dr. Roskind's two loans to Radix Partners and Radix Labs are valid and legally enforceable, and Dr. Roskind is a creditor of Radix Labs as a result of those loans for purposes of NRS 86.521(a) in the amount of $40,000 plus interest as calculated in finding of fact No. 39.

9. NRS 86.521 determines distributions to creditors and members upon dissolution of a Nevada LLC. Absent an agreement of the members, the assets cannot be distributed in kind. Mr. Emigh does not agree to distribution of the assets of Radix Labs in kind. As a result, the existing patent and the remaining 38 patent applications owned in Radix Labs must all be sold.

10. Mr. Emigh cannot be considered a creditor of Radix Labs as a result of his "sweat equity." Under NRS 86.521(1)(a), liabilities to creditors, including creditors who are also members, are to be paid first priority, except payments to members on account of their contributions.

11. Absent an agreement between the members in winding up the affairs of Radix Labs, the assets of the company must be sold, if necessary, to pay creditors' claims and make distributions under NRS 86.521(1)(a).

12. Radix Labs has no profits and other compensation by way of income on the members' contributions. So there are no distributions to be made pursuant to NRS 86.521(1)(b).

13. Pursuant to NRS 86.521(1)(c), proceeds from the sale of any assets remaining after payment of creditors must be divided in proportion to the members' capital contributions.

14. Having admitted in his answer that ownership of Radix Labs is vested 50% in each member, Mr. Emigh cannot now claim that Susan Yi is entitled to a membership interest in Radix Labs in this action. A membership interest in an LLC cannot be created in the absence of a written agreement. Since no written agreement creating a membership interest or a beneficial interest of Ms.

Yi in Radix Labs exists, Ms. Yi disclaimed any role as attorney for Radix Labs, Ms Yi never asserted any right to an interest in Radix Labs in this action, and Mr. Emigh admitted in the pleadings that he and Dr. Roskind were each 50% owners of Radix Labs, the assertion by Mr. Emigh at trial that Ms. Yi has an interest in Radix Labs is frivolous.

15. Having admitted that the original 32 patent applications are assets of Radix Labs, Mr. Emigh cannot contend in this action that any of the patent applications are not property of Radix.

16. Having neither counterclaimed nor pleaded for any "equitable" reformation of Radix Labs, Mr. Emigh cannot now contend that Radix Labs must continue to operate under some Court imposed regime or with Dr. Roskind and Mr. Emigh continuing to share interests in all of the patent applications. It must be dissolved and its assets must be sold to pay creditors pursuant to NRS 86.521.

17. Federal courts are required to apply state law in diversity actions with regarding to the allowance or disallowance of attorneys' fees.

18. Mr. Emigh's defenses to the claim that Radix Labs should be dissolved pursuant to NRS 86.495 are frivolous within the meaning of NRS 18.010(2)(b).

19. In the event any of these Conclusions of Law should more properly be deemed Findings of Fact, they shall be so deemed.

Dated: September 22, 2008.

_____
United States District Judge

Respectfully submitted,

Lionel Sawyer & Collins

By: /s/ _____
Rodney M. Jean
Gregory R. Gemignani
Attorneys for plaintiff James Roskind

Approved/Accepted:

Holland & Hart LLP

By: _____
Brad M. Johnston
Attorneys for defendant Aaron Emigh

11

## Certificate Of Service

I hereby certify that on the 25th day of July, 2008, I emailed a true and correct copy of the foregoing Plaintiff's Findings of Fact and Conclusions of Law to:

Brad M. Johnston
Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, NV 89511
775-327-3000
Email: bjohnston@hollandhart.com

_____
An employee of Lionel Sawyer & Collins

12