Rodney M. Jean, NV Bar # 1395
Gregory R. Gemignani, NV Bar # 7346
LIONEL SAWYER & COLLINS
1700 Bank of America Plaza
300 South Fourth Street
Las Vegas, Nevada 89101
(702) 383-8888 (Telephone)
(702) 383-8845 (Fax)
*Attorneys for Plaintiff James Roskind*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JAMES ROSKIND, an individual,<br><br>                Plaintiff,<br><br>v.<br><br>AARON EMIGH, an individual; and RADIX LABS LLC, a Nevada limited liability company,<br><br>                Defendants. | Case No.  CV-S-05-0825-RCJ-RJJ |

## PLAINTIFF'S STATUS REPORT AND REQUEST FOR EMERGENCY HEARING

**I.   Introduction.**

On December 9, counsel for the parties reported to the Court the results of a Court ordered bid process with respect to the patent applications and the one issued patent of Radix Labs, LLC (the "Radix Patent Portfolio").  The Court then directed counsel to submit either an Agreed Settlement Statement and a Revised Judgment "which states exactly what the Court did and the conclusion," or a Request for an Emergency Hearing within ten days.  Ex. 1.[1]

More than a month later, the parties have not reached a global settlement, nor have they reached definitive agreement on the language of an Agreed Settlement Statement.  The Court has now entered an order directing counsel to submit a status report as to the proposed order, settlement statement, and proposed judgment. Accordingly, Dr. Roskind now submits this Status Report and Request for Emergency

---

[1]   Transcript of hearing, December 9, 2008, p. 6, ll. 13-17, and p. 7, ll. 7-8.

Hearing. To the extent the Court needs to review how the discussions have lingered, the negotiation process is summarized in footnote 2 below.[2] The more salient matter, however, is deciding the outstanding issues. These have been extensively, negotiated. However, since the parties have been unable to resolve the remaining issues over a period of over four weeks and the case was tried seven months ago, plaintiff respectfully requests an expedited hearing to finally conclude this case.

## II.     Undisputed Items.

There is, as there was on December 9, agreement on some things:

A. The final dollar amounts bid and the identity of the high bidder for each patent grouping remain undisputed. These are summarized as follows:

| Group | Topic | Final Bid | Successful Bidder |
|---|---|---|---|
| A | location | $145,000 | Roskind |
| B | spam | $55,000 | Emigh |
| C | security (patching) | $80,000 | Roskind |

---

[2]     By December 19, 2008, counsel were still discussing settlement terms. Mr. Jean filed a statement indicating a submission would be made the following Monday, December 22. Docket #134.

On Sunday, December 21, Mr. Jean sent Mr. Emigh's lawyer a draft Amended Judgment and a settlement offer which could be converted into a Settlement Statement if an agreement was reached. Ex. 2. Mr. Johnston wrote back, saying he thought Mr. Jean would simply prepare a draft settlement statement. Ex. 3. Mr. Jean then sent Mr. Johnston a draft Settlement Statement on December 22, also asking if the remaining open issues could be settled. Ex. 4. After further discussion, Mr Jean sent another draft on December 23. Ex. 5. It was resent early December 26 because Mr. Johnston could not open it in a WordPerfect format. Ex. 6. On December 31, ten days after the draft Amended Judgment and settlement offer was sent, and five days after receiving a draft Settlement Statement, Mr. Johnston sent back a draft which rewrote virtually the entire document, radically altering the proposed settlement format. *See* Ex. 7 (the December 26 draft prepared by Mr. Jean), Ex. 8 (Mr. Johnston's December 31 draft), and Ex. 9 a redline comparison.)

Dr. Roskind's counsel nonetheless attempted to create a hybrid Agreed Settlement Statement Ex. 10, and a revised Judgment, Ex. 11, incorporating most of Mr. Johnston's changes, and submitted both to Mr. Johnston on January 8. In response to emails and calls from Mr. Jean, Mr Johnston sent an email on January 9, saying he was tied up in meetings and would respond as soon as possible, Ex. 12. On the morning of January 12, Mr. Johnston called with comments on the drafts which had been sent on January 9. Mr Jean incorporated those changes into new drafts, which were sent to Mr. Johnston around noon that day. Ex. 13. Mr Johnston responded to those drafts with edits later that afternoon. Ex. 14. On January 13, Mr. Jean provided revised versions of the amended judgment and settlement statement at 12:34 p.m. and 12:39 p.m. (with redlines) that accepted many of Mr. Johnston's revisions, but included minor corrections and revisions. Ex. 15. When called by Mr. Jean at the end of that day, Mr. Johnston could not confirm to Mr. Jean whether he was agreeable to those minor changes and revisions, or even that he would not insist on further changes.

Each party believes the other has unreasonably delayed their responses; however, undersigned counsel believes the parties are close to completing the documents (recognizing that certain issues discussed infra at pp. 4 and 5 remain disputed.)

| | | | |
|---|---|---|---|
| D | spam | $25,000 | Emigh |
| E | multimedia | $95,000 | Emigh |
| F | backup | $35,000 | Emigh |
| G | spam/messaging | $75,000 | Emigh |
| H | spam/messaging | $35,000 | Emigh |
| I | phishing | $75,000 | Emigh |
| J | phishing | $25,000 | Emigh |
| K | voting | $30,000 | Roskind |
| L | messaging | $10,000 | Roskind |
| M | policy | $25,000 | Emigh |
| N | location | $35,000 | Emigh |
| O | search | $25,000 | Emigh |
| P | phishing | $60,000 | Roskind |
| Q | phishing/trusted path | $85,000 | Emigh |
| R | phishing/data security | $95,000 | Roskind |
| S | quarantine | $35,000 | Emigh |
| T | stateful remote control | $20,000 | Roskind |
| U | fraud prevention | $85,000 | Roskind |

B. As the Court was advised on December 9, Mr. Emigh bid a total of $625,000 for the 13 groupings on which he was the high bidder, and Dr. Roskind bid a total of $525,000 for the 8 groupings on which Dr. Roskind made the highest bid.

C. The amount of funds remaining on deposit at Comerica Bank, $5,998.74, has not been questioned.[3]

D. Also undisputed is the unearned portion of a retainer Dr. Roskind paid for patent prosecution to the law firm of Van Pelt & Yi - $825.

E. Finally, the amounts of Dr. Roskind and Mr. Emigh's creditor claims submitted to the Court at trial have not been disputed. The amount due on Dr. Roskind's loans was $52,418.52 as of December 23, 2008, accruing thereafter by $5.32 per diem. (If the settlement date is January 20 (the earliest foreseeable date), the total will be $148.96 higher as a result of the accrued interest, for a total of $52,587.48.)

F. Dr. Roskind does not dispute $2,430 of the $12,240 in *post-trial* late fees for USPTO correspondence claimed by Mr. Emigh.

In addition to the foregoing, after exchanges of numerous drafts, the language of

---

[3] Account #18927898274 (the original Radix Labs account) contains $5. Account #1892885987, which was opened as a result of the dispute over dual signatory checks, contains $5,993.74.

the alternative drafts of the Settlement Statement and the Amended Judgment is not very far apart, as can be seen most easily by reviewing the last redline drafts of the Settlement Statement and Amended Judgment sent by Mr. Jean to Mr. Johnston today around noon, Ex. 15.

### III.   Disputed Items.

Undersigned counsel was aware of three unresolved issues when the first draft Settlement Statement was sent to Mr. Johnston:

A. Dr. Roskind's motion for attorneys' fees.

B. Whether to recognize the disputed USPTO late fees included in Mr. Emigh's post-trial expenses as a valid creditor claim, and if so, in what amount? (Mr. Emigh claims $12,240 in USPTO fees, of which $9810 is disputed. A summary of Mr. Emigh's post-trial USPTO expenses was provided by Mr. Emigh's counsel on December 17, and a copy thereof is attached hereto as Ex. 16.)

C. Taxation of Dr. Roskind's court costs. (A Bill of Costs in the amount of $7,573.55 was emailed to Mr. Johnston on December 22. A copy thereof is submitted as Ex. 17.)

The attorneys' fees motion is fully briefed and the Court now has Dr. Roskind's Bill of Costs before it. These items are ripe for determination with or without oral argument.

Mr. Emigh's post trial expenses are new to the Court. In the absence of a global settlement, Dr. Roskind disputes the majority of those charges because they consist chiefly of late fees incurred because Mr. Emigh routinely waited well beyond the initial response period to submit his responses to USPTO office actions. (Responses may be submitted up to several months late, but late fees are charged by USPTO and they increase progressively every 30 days after the initial response period.) In most of these cases, Mr. Emigh waited until at or near the last day of the penalty period to submit his responses. Had he filed timely, there would have been no charge. On matters involving follow up issues with USPTO, the late filings increased the penalties. Although Mr. Emigh has not documented his expenses in a way that allows an easy breakout of late fees, Dr. Roskind believes $9,810 (all but $2,430 in Request for Continued Examination

4

Fees ("RCE") of the $12,240 claimed by Mr. Emigh) constitute late fees.[4]  Dr. Roskind has no objection to Radix reimbursing Mr. Emigh $2,430 for the RCE fees.

Particularly egregious is Mr. Emigh's inclusion of a $960 charge including a $555 late fee on a December 11 submission made *after* Mr. Emigh had already successfully bid on the grouping containing the application in question.  Indeed, Mr. Emigh has not even forwarded that submission to Dr. Roskind, recognizing that Dr. Roskind will have no interest in that application.  It is inappropriate to charge Radix for an expense incurred after the bidding which will only benefit Mr. Emigh.

While Dr. Roskind acknowledges that inventors sometimes need to take more time to respond and accept the late charges as part of the cost of doing business, it is uncommon in the extreme to routinely wait until the *last day of the penalty period* to respond, incurring late fees on every one of the post-trial office action responses.  This appears to have been part of a conscious strategy by Mr. Emigh to keep Dr. Roskind in the dark about the status of the Radix IP, an issue which previously became severe enough to require Dr. Roskind to file a motion to compel prompt correspondence.  *See* Section IV(B), infra at pp. 6 and 7.

Finally, it is also worth noting that all but $1,485 of the $12,240 submitted by Mr. Emigh involved charges on applications which Mr. Emigh acquired in the bid process.  Nearly $11,000 of the post trial expenses for late applications have provided no benefit to Dr. Roskind.

## IV.    Additional Issues.

Two critical issues have arisen in addition to those mentioned above:  (1) Mr. Emigh refuses to forward the full application files on the groupings as to which Dr. Roskind was the successful bidder; and (2) Mr Emigh has again failed to timely forward USPTO correspondence.

### A.    Mr. Emigh has Refused to Forward Complete Application Files.

Although Mr. Emigh purports to acknowledge the results of the bid process and has promised to do so, over the last month he has yet to deliver to Dr. Roskind the entire files for those applications on which Dr. Roskind was the successful bidder.  In fact, he

---

[4] The $2,430 represents the fees for six Requests for Continuing Examination, which would have needed to be filed in any event.  A $405 charge for each of these is included in the total for six of the expense items listed on Ex. 16.

5

has refused to do so.  Ex. 18.  He now says that he will only forward files for the grouping on which Dr. Roskind was the successful bidder *after the distribution of assets*.  This is critical because the deadline for responding to one of the office actions is January 15.  Id.  This conduct has made it more difficult and costly for Dr. Roskind's patent attorney to prepare his response.

By holding the patent files hostage, Mr. Emigh has once again demonstrated his bad faith in this case.  Mr. Emigh must now be ordered by the Court to transfer the *entire* files for all applications as to which Dr. Roskind was the successful bidder, instead of continuing to play the kinds of games which caused the breakup of Radix.  Mr. Emigh has stalled for a month; absent a Court order he can be counted on to do whatever he can to hobble the ability of Dr. Roskind to maximize the return on the portions of the Radix Patent Portfolio which he is acquiring.

### B.  Mr. Emigh is Again Holding Back USPTO Correspondence.

Mr. Emigh has continued his flagrant failure to timely forward communications with the USPTO, *even after an order of this Court directing him to do so.*  The refusal to timely forward such communications caused Dr. Roskind to raise the issue in a response to Mr. Emigh's motion to vacate the originally scheduled sale date of September 29.  Docket #106.  As the Court will recall, some additional communications were forwarded to Dr. Roskind after the issue was raised.  During a conference call scheduled by the Court on September 24, Mr. Emigh's attorney assured the Court that all USPTO correspondence had been sent.  The Court asked Mr. Johnston on the call to commit to a "gentleman's agreement" that there would be no further delays in transmittal of information.

It turned out that Mr. Emigh had *not* forwarded all correspondence as of the September 24 conference call.  Mr. Emigh continued to hold back two office actions mailed in early September, finally forwarding them to Dr. Roskind 12 days after the conference call, on October 6.  This prompted Dr. Roskind to file an Emergency Motion to Set Date for Asset Sale and to Compel Mr. Emigh to Promptly Share Correspondence with USPTO on October 23.  Docket #108.

After a hearing the Court entered a minute order on November 10 directing Mr. Emigh to promptly forward USPTO correspondence within 48 house of receipt in his

6

mailbox, Docket #118, and directing Mr. Jean to submit an order reflecting the Court's decisions of that day by November 24. Mr. Jean drafted a proposed order and provided a copy to Mr. Johnston immediately after the hearing on November 10. Ex. 19. Counsel exchanged emails regarding the order, but could not agree on the wording of the written order.[5]

Today Mr. Emigh forwarded two more office actions on applications PA-009 and PJ-023. Ex. 20. Both are applications contained within patent groupings on which Dr. Roskind was the successful bidder. The application cover sheets reveal they were mailed by the USPTO on December 24 and December 29. Id. Even assuming a week for mail over the holidays, Mr. Emigh has held onto those office actions and not forwarded them within two days as the Court ordered. His continued failure to do so mocks the authority of the Court and has continued to drive up the costs of this litigation. His failure to recognize that this is unacceptable demonstrates why his defense that the disputes which led to dissolution were not severe was frivolous.

## V.     Differences Between the Initial Draft Settlement Statements.

The heart of the dispute that caused Plaintiff's delay lies in the differences between the draft Settlement Statement prepared by Dr. Roskind and forwarded on December 23 (Ex. 7), and the draft prepared by Mr. Emigh in response (Ex. 8.) Those differences are apparent in the redline comparison submitted herein as Ex. 9, which shows the revision sent by Mr. Johnston on December 31 is not really an edit so much as it is a complete rewrite. The Roskind draft (Ex. 7) was driven by a realization that the parties could not simply net out the bids to arrive at the Equalization Payment; once the Radix Patent Portfolio is distributed, Radix will have only one asset – the sum of the $100,000 Equalization Payment, the $5,998.74 on account at Comerica Bank, and the $825 to be refunded by Van Pelt & Yi. That total is $106,023.74.

In an effort to resolve the drafting differences and approaches, Dr. Roskind went to the additional effort on January 8, 2009, of tailoring revisions of the Settlement Statement to the version offered by Mr. Emigh's counsel with. Ex. 10. Since January 8,

---

[5] The written draft order was concerning the requirement to forward USPTO Correspondence was never submitted because events overcame it. By November 24, The Court had entered a final judgment and the scheduled auction was only two weeks away over the Thanksgiving holiday. However, a review of the minute order clearly reflects the requirement that such correspondence be forwarded within 48 hours of delivery to Mr. Emigh's mailbox, and the emails do not reflect dispute on that point.

the parties have exchanged several draft settlement statements and amended judgments; however, the parties have not been able to reach a final agreement on the text of either document.

Without considering the post trial late fee expenses which Dr. Roskind disputes, the amount due to creditors consists of the following:

| | |
|---|---|
| $52,587.48 | The amount payable to Dr. Roskind on his loans to Radix (as of 1/20/09) |
| $20,526.82 | Mr. Emigh's reimbursable expenses, per the findings and conclusions |
| $2,430.00 | Mr. Emigh's post trial expenses not disputed by Dr. Roskind (RCE Fees) |
| $40,127.80 | Dr. Roskind's reimbursable expenses, per the findings and conclusions |
| $115,672.10 | Total undisputed creditors' claims |

With Mr. Emigh's disputed post trial late fee expense included, the creditor claim total would rise by another $9,810.00 to $125,482.10  The initial Settlement Statement prepared by Dr. Roskind provides sufficient money to pay all creditor claims by requiring receipt of the Equalization Payment before distribution of funds to repay the loans made by Dr. Roskind.  It ensured payment of fees and costs awarded by the Court by requiring payment thereof before distribution of the remainder of the funds held by Radix.  The sum of the Equalization Payment, the funds held on account at Comerica Bank, and the refund from Van Pelt & Yi, is less than the total due and payable to creditors.  However, a dollar-for-dollar reduction in the creditor distribution to both parties preserved the priority of both, because the LLC is owned 50/50 by Mr. Emigh and Dr. Roskind, and they are the only creditors.

Mr. Emigh's response draft Settlement Statement assumed *all* of the late fees incurred by Mr. Emigh as a result of his attempts to keep Dr. Roskind in the dark about the status of the office actions had been agreed upon without a global settlement.  That is simply not true.

The drafts sent by Mr. Jean on January 8 accepted the extensive change in format which Mr. Johnston had made and incorporated the vast majority of his changes.  Each change thereafter has narrowed the issues between the parties concerning the language of the documents.  Accordingly, even though Mr. Emigh's counsel's has reserved the right to insist on significant future changes in the documents, counsel for Dr. Roskind believes the draft Settlement Statement submitted to Mr. Emigh on January 13 and the draft Amended Judgment sent to Mr. Johnston that same day constitute a fair statement of what has been agreed upon and what issues remain open, and is not aware of any

substantial issues regarding the form of the Amended Judgment. In the absence of actually having agreement on the documents or absolute clarity as to the disagreements about the documents, Dr. Roskind submits this status report, which has been requested by the Court, to inform the Court of the current status of the matter and request an expedited hearing as soon as possible regarding the areas of disagreement.

Dated: January ___, 2009

LIONEL SAWYER & COLLINS

By: _/Rodney M. Jean/_____
Rodney M. Jean, NV Bar # 1395
Gregory R. Gemignani, NV Bar # 7346
*Attorneys for Plaintiff James Roskind*

**Certificate of Service**

I hereby certify that on the __13th__ day of January, 2009, I e-mailed a true and correct copy of the foregoing Plaintiff's Status Report and Request for Emergency Hearing to:

Brad M. Johnston
Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, NV  89511
775-327-3000
Email:  bjohnston @hollandhart.com

Additionally, this document was filed electronically with the U.S. District Court and therefore the court's computer system has electronically delivered a copy of the foregoing document to the following people at the following email addresses:

Brad M. Johnston
Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, NV  89511
775-327-3000
Email:  bjohnston @hollandhart.com

Attorneys for Defendant Aaron Emigh

Rachel K. McLendon Kent
Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, NV  89511
775-327-3000
Email:  kmclendonkent@hollabndhart.com

/Gregory R. Gemignani/
An Employee of Lionel Sawyer & Collins